### Ex parte GREGOIRE.

No. 24652–S.

District Court, N. D. California, S. D.

June 12, 1945.

Fred McDonald, of San Francisco, Cal., for petitioner.

Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., for I. F. Wixon, District Director of Immigration and Naturalization, Department of Justice, respondent.

ST. SURE, District Judge.

Petitioner, detained as an enemy alien by the District Director of Immigration and Naturalization for the port of San Francisco, seeks release by writ of habeas corpus on the ground that he is a French citizen and therefore wrongfully deprived of his liberty.

Petitioner was taken into custody under a warrant of arrest issued by the Attorney General of the United States, by order of the President, on January 2, 1942. Title 50 U. S. C. A. § 21; Presidential Proclamation No. 2526, 55 Stat. 1705, issued December 8, 1941. The Government moves that the petition be denied and the order to show cause heretofore issued be discharged. The facts are undisputed and counsel for respective parties have stipulated that the matter may be submitted upon the record and papers in the case, as though a hearing had been had upon the merits.

Petitioner was born in Metz, Province of Lorraine, Germany, on October 9, 1894. His father was born in the Province of Lorraine in 1865, prior to its cession to Germany. The Treaty of Peace of 1919 provided that a native of Lorraine, descended from those who were French citizens prior to the annexation of the Province by Germany, became, with certain exceptions not applicable here, ipso facto nationals of France. Prior to his entry into the United States in 1941, petitioner practiced law in France for some twenty-two years. His French citizenship is admitted.

The question for decision turns on the interpretation of section 21 of 50 U.S.C.A., which provides that: "Whenever there is a declared war between the United States and any foreign nation or government * * * all *natives*, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies." (Italics supplied.)

In United States ex rel. D'Esquiva v. Uhl, 2 Cir., 137 F.2d 903, 905, the court held that an Austrian who left Austria and established French residence twenty years before the invasion of Austria by Germany, did not become a German citizen, but remained a native of Austria. Petitioner relies upon the following dicta in this case: "And an Alsatian should not be held subject to detention as an alien enemy merely because (unlike other members of his family, for example) he happened to have been born after the original cession of Alsace to Germany and prior to its return to France in 1919." The use of the word "merely" is significant, in that it indicates that in the presence of further circumstances, such person might be deemed an enemy alien. In United States ex rel. Schwarzkopf v. Uhl, 2 Cir., 137 F.2d 898, 902, decided by the same court and referred to in the D'Esquiva case, the court said: "The obvious purpose of [the Alien Enemy Act] was to include within its ambit all aliens who by reason of ties of nativity or allegiance might be likely to favor 'the hostile nation or government' and might therefore commit acts dangerous to our public safety if allowed to remain at large."

Although not determinative of the question here, it is interesting to note that the return to the order to show cause by the District Director states that petitioner attended the University of Heidelberg, was conscripted and fought in the German army in the first World War, attended a meeting in Germany in 1935 which was addressed by Adolph Hitler; that while practicing law in Paris he represented various German interests, and during the recent occupation of France by Germany, entertained high German officers in his law office in Paris.

The language of the statute describing persons subject to restraint and removal is in the disjunctive. A man may be a native of one country and a citizen of another, and if he be a native of a hostile country his citizenship in a friendly country does not change or efface the fact of his nativity. The word "native" pertains to birth. "Hence a person remains a native of the country of his birth, although he has moved away and become a citizen or subject of another nation or government." United States ex rel. D'Esquiva v. Uhl, supra. Petitioner was born in Germany, and whatever citizenship he later acquired, he is a native German within the purport of the statute.

The petition for a writ will be denied and the order to show cause discharged.